Today, Goodwin v. Conway and Listener. May it please the court, Eric Scott Pasterak, Deputy Attorney General, representing defendants Conway, Listener, and Sadorsky. With the court's permission, I'd like to reserve three minutes for rebuttal. Yes, sir. Because the observations of fellow law enforcement officers are a plainly reliable basis to establish probable cause, the district court's decision should be reversed as two officers here identified Mr. Goodwin as a snipe, and the record is devoid of any evidence or testimony indicating the officers were aware that Mr. Goodwin may have had an alibi at the time of his arrest. Are you conceding for purposes of summary judgment? The officers had the booking sheet when they prepared the affidavit of probable cause? Yes, Your Honor, for the purposes of summary judgment only. You're conceding that? We are conceding that. All right. There's a practicality, though I have to disagree on the same subject. Do officers usually have these booking sheets when they apply for arrest warrants? There was testimony indicating that is not a common occurrence, Your Honor. But they had it in this case? As we conceded in the summary judgment, yes. And the booking sheet makes it clear that Mr. Goodwin was in custody at the time of the first sale, right? I disagree, Your Honor. The booking sheet says two things. First, it identifies— Go back to the question. Did they have it? They did have it, right? Yes, for purposes of summary judgment. Yes, Your Honor, they did have it. Only for purposes of summary judgment. It's kind of important from my perspective. Whether they had it— In other words, it's a disputed fact. It could be a disputed fact, but you're saying, yes, they had it. We are saying, yes, they had it for the purpose of summary judgment because qualifying immunity can be granted here. I just don't know. I'm trying to make sense of this case. I can't imagine officers walking around with booking sheets. I just don't know that that's something that you do because to have a booking sheet, you have to pretty much check all the jails, all the detention facilities. Is the target of my warrant in your custody? Do they do this? I can't say for certain what they do. It was testimony in the hearing that is not a common occurrence in here. It's just because they were in touch before the indictment and arrest and all, right? The booking sheet here, though, was obtained from the Plainfield Police Department. Right. And that was an officer that— It was obtained from where? The Plainfield Police Department, Your Honor. Plainfield. And it was Lieutenant O'Brien from the Plainfield Police Department— By the officers? —who first identified Mr. Goodwin as— By the officers? Yes. Oh, okay. But if they had—I'm sorry, let me answer my question. If they had the booking sheet, and I understand you're going to argue that that confirmed the identification, but doesn't that same booking sheet, if they had read it carefully, make it clear that he was in custody at the time of the first sale? No, Your Honor, it does not. It does not. It only indicates that he was in custody at the time the booking sheet was printed and that it only indicates he was in custody on September 26, 2009, and not at the time he was in custody later that week. But there's no release date on that booking sheet. Yes, Your Honor, there is no release date, but I think it's fundamental, as this Court has explained in Trabal, as this Court has explained in Wilson, that there is no actual duty to investigate an alibi once probable cause is established. And here, probable cause was established at the moment Lieutenant O'Brien identified him as a snipe, and especially after that was corroborated by Detective Lister. So here, the booking sheet, it identifies Mr. Goodwin as a snipe and indicates he was incarcerated on September 26. But because you have those two previous identifications of him, and actually three if you consider the booking sheet as well, there was no duty to determine if he remained in custody after September 26. And truthfully, that is so because you have here two officers, one based on his knowledge of the plaintiff and the other based on two interactions with him during the two purchases, where this officer, he viewed the suspect as a snipe, he interacted with him, and he then identified him based on his own personal observations. And that is something that this Court, as well as other circuits, have found to be a reliable basis to establish. This is just a little confounding. There's a booking sheet that says the guy's in jail. Why not just pick up the phone and say, before we make a big deal about this, do you still have the guy or not? It's just kind of confounding, you know, logically. I think logically. I think the Sixth Circuit said it best in Muldawon that officers have no duty to glean any piece of exculpatory evidence from them. They have no requirement to divine the materiality of any piece of exculpatory evidence that may be as part of a document. So here they had based on personal observations of Mr. Gilwin, they believed that this was the same individual and that this document, it identifies him as a snipe. The fact that he may be in custody, doesn't that affect the probable cause determination that he, Goodwin, committed an offense on that day, on the day that he was in custody? No, Your Honor, because to affect the probable cause determination, you have to find that it is plainly exculpatory and that it is material. Here, it's not plainly exculpatory because a document that identifies him as being in jail on a date other than the actual purchase, you could draw many inferences from that. One of those, as Your Honor is suggesting, is that he remained in jail for the next six days, but there is another inference being that he was released sometime in between. And because there are multiple inferences available, ordinarily that would be something that would be a factual dispute. You're presenting this information to a judge with a sign and arrest warrant. You don't think that a judge would like to have this information so the judge can determine this person may be in jail? Maybe he'd better find out because I'm not going to have him arrested if he was in jail when the offense was committed. In other words, don't you think this is a relevant piece of information that should be submitted with the arrest warrant application? No, I don't, Your Honor, because they already had identified him. And I think it's important to note here that with qualified immunity, there actually does not need to be findings that there was probable cause. This qualified immunity is broader. Qualified immunity in a situation where they had a booking sheet suggesting he might be in custody, they can just ignore that and then hide behind qualified immunity? Well, they weren't ignoring it. They were following this court's own precedent of that once probable cause was established, which here was by two officers making an identification based on their own personal knowledge and history, that they had no then duty to go forward and look for other exculpatory evidence. So here, the booking sheet absolutely was an investigative lead, and with hindsight, we can say that maybe they should have explored that, but it's not something that should result in them being denied qualified immunity because there is no precedent of a court denying qualified immunity under these circumstances, especially when you consider that in Wilson, this court found that where there was one witness identifying the suspect, another one that did not identify the suspect, another person who provided an alibi for the witness, and that the physical descriptions of a plaintiff and suspect differed, that that exculpatory evidence of the alibi and those identifications, that was not material to finding a probable cause. So what did Judge Wolf go wrong on this case? I think Judge Wolf went wrong, fundamentally speaking, in failing to distinguish between qualified immunity and probable cause. She found that because there were issues of fact relating to probable cause, there could not be qualified immunity, but here there is no clearly established rule saying that these officers had to continue an investigation even after probable cause was once finished. So under Saucere, she failed to identify, she failed to consider that there wasn't a clear established rule in qualified immunity. But wait a minute. What if the probable cause assessment was faulty? Excuse me, Your Honor? What if the probable cause determination was not correct? What if it's questionable whether there was probable cause? Your Honor, if it's questionable whether there was probable cause, I know your argument is that there was, but there is an assessment. It should have been determined, could be, should have been assessed by the judge on the basis of the booking sheet. Your Honor, qualified immunity is broader than probable cause, but also importantly here, the plaintiff himself alleges that that booking sheet was a part of the affidavit of probable cause that actually was submitted to the judge who issued the warrant. So while there is a testimony of whether the officers actually believed that was there for the purposes of summary judgment, we're actually relying upon plaintiff's own allegations. So this booking sheet was presented to the judge together with the application for an arrest warrant? That was plaintiff's contention on summary judgment, Your Honor, yes. Okay. Now, the district court found that there was a genuine issue of material fact as to whether the defendants knowingly or recklessly disregarded the fact that Is that even something we have jurisdiction over? Isn't that a purely factual question? No, Your Honor. It is a legal question because for the purposes of summary judgment, we conceded these facts, and we are looking at whether there was a clearly established duty for the officers to look for exculpatory information. And here, they only presented a booking sheet saying who's in jail on the 26th. And as this court remarked in Allied Steel v. Robertson So are you saying, are you not saying you're conceding that the, for purposes of the motion anyway, that the defendants knowingly and or recklessly disregarded the fact that he was incarcerated at the time, right? Well, I think a distinction must be made between being incarcerated on the 26th versus being incarcerated on the date of the first purchase. There is no piece of evidence saying that he continued to be incarcerated. Well, but the district judge found that there might be, that there was a genuine issue of material fact about that, whether they actually knew that he was in jail or they recklessly put their head in the sand and said, we're not going to consider whether he was in jail or not. There's no release date on that piece of paper. Yes, Ron, there is no release date, but it was also important to keep in mind that Mr. Goodwin was incarcerated in three different facilities during that week, so this particular document had to have been printed before he was transferred. Do we know for sure, maybe you just answered this, but do we know for sure he was not in jail at the time? At the time of the first purchase? Yeah. No, Your Honor. We're not sure if he was in or not. He was released on the day of the first purchase, and there is a dispute about what time he was released. What time, yes, okay. But the purchases, as I understand, the purchases earlier in the day than the time the plaintiff is suggesting he was released, right? Yes, Your Honor. Wait a minute. The purchase, the buy, occurred before he was released? That is the plaintiff's suggestion, Your Honor. Oh, well, wait a minute. It's important. I mean, you're saying he got out of jail on what is the date? October 2nd? Yes, Your Honor. He got out of jail, and then the offense occurred? Is that your view? Is that your position? Our position is that he was the person who actually was properly identified, but for the purposes of summary judgment, what really matters is what documentary evidence or what evidence the officers had indicating that he was incarcerated. And the only thing that's been identified is the booking sheet, which does not indicate he was incarcerated on the day of the first purchase, but only on September 26th. It doesn't indicate a release date. And the protocol, as I understand it, would be that the release date, if no release date, would suggest that he's still in custody, right? Potentially, Your Honor, but that's only one possibility. And to be plainly exculpatory, I think it's important, as this Court said in Wilson, that the evidence has to be conclusive and really apparent on his face. But he was arrested and released the same day, right? Ultimately. September 26th. No, he was incarcerated from that to the date of the first purchase, released on the date of the first purchase. It says arrest occurred September 26th, offense occurred September 26th. That was for the booking sheet the officers had received, presumably. That was a different case, right? Yes. All right. That was a separate charge.  Okay, thank you very much. Thank you, Your Honor. Ms. Aiello? May it please the Court, my name is Katherine Aiello, I'm an attorney at Lohenstein Sandler. We are pro bono counsel appointed by Judge Wilson for the plaintiff, Apelli Rashid Goodwin. We come here today to respectfully ask the Court to affirm the lower court's denial of summary judging as to the defendant's claim of qualified immunity. I have to say, after hearing the questions posed to my adversary, I think the Court is on the right track here. There are purely factual questions. There's a genuine issue of material fact regarding probable cause, and that basically gets down to the booking sheet. I was a bit surprised that for the first time they're conceding now that the officers did have the booking sheet in their possession upon completing the affidavit of probable cause, because that was not in the briefing. And so that was a bit of a surprise to us here today. And I appreciate that the Court understood that if they do have this booking sheet in front of them, which does show that there's no release date, they at least have a duty to investigate, especially under Reedy v. Evanson, even in the face of substantial inculpatory evidence, which we dispute as far as detective listeners and Lieutenant O'Brien's identifications. Regardless, they had potentially exculpatory evidence in their possession under their control. Is it correct that I was looking at this booking sheet, which may not be the right one, but it may be. He was arrested on September the 26th, but released October 2nd. Is that correct? Yes, Your Honor. The booking sheet is A340, the one that we're discussing. This is the one you say he could not have committed the offense because he was in custody, or at least this should have been presented to the judge.  And there is an A310, Your Honor. It is an inmate lookup list that clearly identifies that the discharge date was October 2nd, which is the day of the first purchase. Does it have the time? It does not have the time. And Mr. Goodwin, in his deposition testimony, did say that he recalled being released sometime in the nighttime. Can I ask you a question, though? There was an arrest for an offense October the 16th, and no one disputes that that person, who was Goodwin, also known as Snipe, was arrested. And this arrest refers to Goodwin, but also refers to Snipe. So it seems like we're talking about the same person. In other words, this Goodwin Snipe was arrested on September the 26th. He is the one, apparently, who did the sale on October the 2nd, who was then identified in the photograph, who was then identified by Lieutenant O'Brien. So how is it that we're talking about two different people? Well, Your Honor, Mr. Goodwin disputes that he's ever gone by the nickname Snipe. In fact, during his deposition, when he was shown the booking sheet, which has- You mean this is a mistake? It could be, Your Honor. It says nickname Snipe. I mean, Snipe is not a nickname everybody adopts. So it's somewhat unique, I think. And this person, who was released on October 2nd, is nicknamed Snipe. He disputes that. He disputes- It does say on the booking sheet- He disputes that he was a sniper, he disputes- But it says he was never gone by the nickname Snipe. He does not know why it appeared on the booking sheet. And when we deposed the officers, it was interesting, because they said they had never seen in all their years a booking sheet that had with asterisks and alias on it. We don't know how that ever got on the booking sheet, but apparently it's been on all of the booking sheets from that point on. There's other, of course, identifying information, including date of birth and height and weight and so forth. I mean, if they match up, you're talking about the same person. My client disputes that he's ever gone by the nickname Snipe and says he has never used that alias. In fact, Lt. O'Brien, who made the phone identification to Sgt. Scheer, Sgt. Scheer was the sergeant who reached out to Lt. O'Brien to say, we have a suspect. We believe he was going towards the direction of Plainfield. He goes by the name of Snipe. Do you know anyone by the name of Snipe? And we don't know the details, because when deposed, they couldn't, obviously, six years later, recall the details of the conversation. But Lt. O'Brien did say that he believed an alias Snipe may be associated with Rasheed Goodwin. Under his deposition, however, he testified that in his presence, Mr. Goodwin never referred to himself as Snipe. He had only met him five or six times. What do you make of also the photo identification by Detective Lissner who said, and then signed it on the back, that's the guy who sold me drugs on October 2nd? We also think there's issues of credibility there, Your Honor. When we deposed Detective Lissner, he could recall no details as to the presenting of that photo. And by the way, it was a black and white photograph. We're not sure if it said it was highly suggestive at the top. It would say Union County Correctional Facility. You might be right, because issues of credibility always present themselves. Yeah, they always present themselves. But we're not talking about what goes to the jury. We're talking about probable cause. What is in the officer's mind to believe that he can arrest this individual? And if we're looking at this sheet, and we're also considering the signed photograph, as well as the statement of Lt. O'Brien, why isn't that reason to believe that the person that I want to arrest is the guy who sold me the drugs? Well, Your Honor, it's certainly something that I'm sure we know Detective Conway considered. It's some form of inculpatory evidence that he considered when he was filling out the affidavit of probable cause. All I would say in response is, under reading, I still think that they are in possession of the booking sheet. They had a duty to investigate. It was not a heavy lift. They had made a phone call to Lt. O'Brien to inquire about a nickname. They made a phone call to the Union County Correctional Facility in order to photograph. Just make a phone call and find out when was he released. Let's assume they did make that. I'm sorry. That was a point you should have asked for. Before, why don't you just pick up the phone and make the call? I couldn't agree. You're not asking for anything that would be a burden on the police. There were no adjacencies associated. No split-second decisions. The case had gone cold for a complete month. No communication between SNIPE and the investigative team. But on the other hand, to pick up on something you said right at the start, there's no duty to present exculpatory evidence to a judicial officer in getting a warrant, right? No, but you do have to look at the totality of the circumstances when you're dealing with a probable cause analysis. But that goes to defense, not to probable cause. I mean, if Mr. Goodwin wants to say, you got the wrong guy, I wasn't the guy who made the sale, that's a matter of defense. That doesn't go to probable. Well, I think you do have to weigh, based on reading, you do have to weigh the inculpatory against the exculpatory evidence. And what we're suggesting in our position is that there was no release date. Now we're conceding that they actually had the booking sheet in their possession. It was a duty to investigate. I think it's rejectably reasonable for an officer, faced with the same set of facts and circumstances, when there doesn't require a split-second decision to pick up a phone and make a quick call just to confirm, when did this individual get released from prison? If they had made that phone call and the prison said, then you'd also have to ask what time, right? I'm sorry? You'd also have to find out what time he was released on the date. Well, that would be important, clearly, because we do know that the purchase happened at 3.30 in the afternoon. And you're right. Again, there is nothing in the record to confirm other than Mr. Goodwin's testimony as to when he recalled being released. And he said that was sometime in the nighttime. I just wonder, though, if you're looking at a sheet from the standpoint of an officer who did a buy, he's looking at a – you say he had this booking sheet in his possession. That's what they said, yes. All the information, the rate, ethnicity, date of birth, nickname, snipe, et cetera, et cetera. Why would that not be sufficient for probable cause, which is a pretty low bar, actually. Let me add one other item, Your Honor. Maybe that will help get to some resolution. Detective Lissner was the undercover for both of the buys. In these investigation reports, which are also part of the record, there was no description of snipe other than blackmail. Mr. Goodwin, as you can see from the booking sheet, has a lot of scars and tattoos in very visible areas of his body, his hands, his arms, his face. There were no details. A month later, Detective Lissner was looking at – it was suggested that they were at a block of wine, not the best quality. It was printed out, I understand, from an email. There could be some confusion. Actually, this does mention a scar and tattoos and so forth. Yes. Even when Mr. Goodwin was being deposed, counsel asked him about his tattoos, which were so visible on his hands. I'm just thinking if on the second buy, on October 16th, it was just Detective Lissner. The confidential informant wasn't there at that time. Snipe gets into the passenger seat and hands the heroin and receives the money in return. You've got to see his hands. They're very clearly tattooed, yet no description goes on to the investigation reports. The investigation reports weren't pictures of clarity, I don't think. Didn't one just say he was just an African-American male? That was it. No height or anything. They weren't together very long, were they? I'm sorry? The actual transaction was not – I think Detective Lissner said it was about 30 seconds. Given the government's concession in this case, would it make sense to send it back to the district court in light of that concession, or are we in a position to resolve this now that they've conceded? I still think that was a disproven fact. Again, I'm sorry because I didn't understand. They were conceding. This has never been in the briefing. Maybe it does need to go back, Your Honor. Can I ask you a question? I take it you rely on a ready case and say, listen, the district court was right, there are general issues of material fact regarding whether the defendants knew or recklessly disregarded this information that he was incarcerated at the time. Is that even something we have jurisdiction to consider? Is that a factual issue? These are all factual issues. Again, Judge Wilson got it right. But do we have jurisdiction to consider on an interlocutory basis a factual question like that? No. I'm trying to look for the case here, Your Honor. Just bear with me. Curley v. Kline, decision on qualified immunity is premature when unresolved disputes of historical fact relevant to the immunity analysis is at stake, and I think that's what we have here. Well, yes. But it is for us to determine whether the booking sheet was material or not. Materiality is a question of law, is it not? Yes, Your Honor. Is that all or anything else? Thank you. Thank you very much. Can I ask one last question? I'm sorry. With respect to the malicious prosecution issue, we've got the grand jury indictment here, and I believe our law, caramolio, says that it constitutes protofacial evidence of probable cause to prosecute. Now, what's in the record to rebut the presumption? Well, Your Honor, I think on this matter as well, Judge Wilson got it right. There are disputed facts regarding probable cause for the initiation of the criminal proceeding, and as you will recall, the defendants did not dispute that they initiated the criminal proceedings. Well, it was indicted, right? It was indicted after the arrest. Right, but that's what I'm talking about from the malicious prosecution. Doesn't the fact that the grand jury indicted this thing, isn't that pretty much going to bar you? Well, I would just rely on Halsey v. Pfeiffer where this court told the district courts to exercise caution before granting summary judgment in malicious prosecution cases because probable cause is a factual issue. That's what we relied on, Your Honor. Is your view, and I'm still looking at this booking sheet, is it your view that the detectives had this in their possession and had a responsibility to submit it with their application for an arrest warrant? Well, Your Honor, we just believe that they had a duty to investigate the information that was in it, which was exculpatory. Okay. And I think it was something that a judge would want to know in making a determination on an arrest warrant. My looking at it is whether it's accurate or not, it doesn't seem to help Mr. Goodwin at all because it allies him with the Snipe, whether that's accurate or not, besides the point. But looking at it from the standpoint of a judge that's issuing an arrest warrant, I don't see that this document would have been helpful to Mr. Goodwin. The only thing I can say is he didn't conclude it, the Plainfield Police Department did. They attributed the nickname Snipe. He has never testified. Even Lieutenant O'Brien said he never used the name Snipe in his presence. It could be a good point, but I'm just thinking from the standpoint of officers back at that moment, I don't see how this would be very helpful. But thank you very much. Thank you. Mr. Pasternak. A famous name, Mr. Pasternak. Thank you. I have a quick few brief points. First, Your Honor, as this Court most recently recognized him in Mario Lee, New Jersey, Division of Child Protection and Permanency, in deciding qualified immunity, it has to look upon the specific facts in this case. So it's not enough to say that he was falsely arrested. You have to look at a factual scenario where this person was identified by two officers and the only potentially a sculptor evidence, and I'm using the word potential sculptor because that's what the opposing counsel just used, and I think that's significant because to be material, this Court said in Wilson that an alibi was a material where there was other inculpatory evidence. Secondly, looking at the United States Supreme Court decision in Cayley v. United States, there the Court remarked that an indictment establishes an indictment, it constitutes indictments very broadly. Finally, the indictment has the power to cause an arrest, but also where there is an arrest without a warrant and it's there, it eliminates the Fourth Amendment right to a hearing. So we submit, as we argued in our briefs, that the indictment here, it not only establishes a probable cause for most prosecution claims, but also for the false arrest claim. And to respond to the arguments appellees raised in their brief that a post-arrest indictment doesn't establish a probable cause for a false arrest claim, here viewing the facts, the inculpatory facts actually preceded the arrest. Those were the same inculpatory facts used for the grand jury indictment. So that concern really is eliminated compared to some cases from other circuits where they found that it would be unfair to essentially say the indictment established a probable cause for the arrest that preceded it when there were new facts uncovered. That's not the situation here. So this indictment should establish a probable cause for both the false arrest and the militia prosecution claims. All right, Mr. Pastanak, if there's nothing further, thank you very much. Thank you, Your Honor. Mike, hold on. Hold on.